**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Kim Agullard, | ) | No. CV-09-2065-PHX-NVW |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Principal Life Insurance Company; WestEd Disability Plan Administrator; and WestEd, | ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff moves to remand this case removed from the Arizona Superior Court, Maricopa County. (Doc. # 18.) There being no federal subject matter jurisdiction, the motion will be granted.

**I.  Background**

Plaintiff Kim Agullard, an Arizona resident, was employed full-time by Defendant WestEd until September 30, 2006. During her employment, she was insured under short and long-term disability policies issued to WestEd by Defendant Principal Life Insurance Company ("Principal"). The policies, which are part of WestEd's employee welfare benefit plan, are administered by Defendant WestEd Disability Plan Administrator. In July 2007, Plaintiff filed a claim for disability benefits under the policies, but her claim was ultimately denied in April 2009. As a result, Plaintiff initiated this action, alleging breach of contract and bad faith insurance practices arising from the denial of her

disability benefits. She filed her Complaint (doc. # 1-1) in the Maricopa County Superior Court on June 26, 2009, and subsequently amended it to correct the name of Defendant Principal on August 18, 2009. Defendants were served on August 31 and September 1, 2009.

On September 30, 2009, Principal timely filed with this Court its Notice of Removal (doc. # 1), asserting both diversity and federal question jurisdiction as bases for removal. Both WestEd and WestEd Disability Plan Administrator have consented to the removal (doc. # 3). Now pending before the Court is Plaintiff's Motion to Remand (doc. # 18), Defendant Principal's Response (doc. # 23), and Plaintiff's Reply (doc. # 28). Plaintiff challenges the removal for lack of both diversity and federal question jurisdiction. For the reasons set forth below, Plaintiff's motion is granted.

**II. Legal Standard**

Federal courts may exercise removal jurisdiction over a case only if subject matter jurisdiction existed over the action as originally brought by the plaintiff. 28 U.S.C. § 1441(a); *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). There is a strong presumption against removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Therefore, the removing party bears the burden of establishing subject matter jurisdiction as a basis for removal. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). All ambiguities are resolved in favor of remand. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). In order to establish federal subject matter jurisdiction, the removing party must demonstrate that either diversity or federal question jurisdiction existed at the time of removal. *Id.* (citing 28 U.S.C. § 1441).

## III. Analysis

### A. Diversity Jurisdiction

District courts have diversity jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Plaintiff does not challenge Principal's assertion that the amount in controversy exceeds $75,000, because she is seeking an amount in excess of $120,000. Rather, Plaintiff contends that there is no diversity of citizenship between the parties. Diversity of citizenship exists only where there is complete diversity, that is, "where the citizenship of each plaintiff is different from that of each defendant." *Hunter*, 582 F.3d at 1043. Furthermore, if the only basis for removal is diversity jurisdiction, the action is removable only if none of the defendants is a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b).

For purposes of determining diversity of citizenship, an individual person is deemed to be a citizen of the state in which he or she is domiciled. *Lew v. Moss*, 797 F.3d 747, 749 (9th Cir. 1986). A person is "domiciled" where he or she has "established a 'fixed habitation or abode in a particular place and [intends] to remain there permanently or indefinitely.'" *Id.* at 749-50 (quoting *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940)). For entities, the state of citizenship depends on the form of the entity. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). A corporation is deemed to be a citizen of the state in which it was incorporated as well as the state in which its principal place of business is located. *Id.*; 28 U.S.C. § 1332(c)(1). An unincorporated association, on the other hand, is a citizen of all states of which its members are citizens. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-97 (1990) ("We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision."); *Johnson*, 437 F.3d at 899. Finally, states and state agencies or instrumentalities have no state "citizenship" for purposes of diversity jurisdiction. *See Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 849 F.2d 1197, 1200 (9th Cir. 1988) (citing *Moor v. County of Alameda*,

411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction.")). However, a political subdivision of a state is a citizen of that state for diversity purposes unless it is merely an "arm or alter ego" of the state. *Moor*, 411 U.S. at 717-18.

In this case, Plaintiff is a citizen and resident of Arizona. Principal, a corporation, is a citizen of Iowa because it was incorporated in Iowa and its principal place of business is located in Iowa. WestEd, on the other hand, is a joint powers agency created by a Joint Powers Agreement (doc. # 23-1) under California's Joint Exercise of Powers Act, and is therefore a public agency. *See* Cal. Gov't Code § 6500 (defining the term "public agency" to include a joint powers authority). There is little to no authority governing the characterization of a joint powers agency for purposes of diversity jurisdiction. Although WestEd is "a public entity separate from the parties to the agreement," Cal. Gov't Code § 6507, it is not a corporation, municipal or otherwise. It is conspicuously not defined as a political subdivision of the state, and it is governed by officials from various states. Therefore, for purposes of diversity jurisdiction, WestEd is either an unincorporated association or state agency. As explained below, the Court need not decide which characterization is correct because in either event there is no diversity of state citizenship.

If WestEd is an unincorporated association, it has the citizenship of all of its members. The members of a joint powers agency are the parties to the joint powers agreement. *See San Bernardino Associated Gov'ts v. Superior Court*, 38 Cal. Rptr. 3d 293, 296 (Ct. App. 2006) (referring to parties to a joint powers agreement as "members" of the resulting agency); *Ray v. Silverado Constructors*, 120 Cal. Rptr. 2d 251, 254 (Ct. App. 2002) (same). In this case, the Joint Powers Agreement (doc. # 1-1) provides for the joint exercise of powers between Far West Laboratory for Educational Research and Development ("FWL") and Southwest Regional Laboratory for Educational Research and Development ("SWRL"). Therefore, WestEd's members are FWL and SWRL. Because FWL and SWRL are also unincorporated joint powers agencies, the same citizenship analysis applies to them. According to WestEd's Governance Policies (doc. # 1-1), FWL

is a joint powers agency established by, among others, the Arizona State Board of Education. Similarly, SWRL is a joint powers agency established by, among others, the Arizona State Board of Regents and the Arizona State Board of Education. If there is citizenship, it includes Arizona citizenship, the same as Plaintiff's citizenship.

On the other hand, if WestEd is a state agency or instrumentality, it has no citizenship for purposes of diversity jurisdiction. As a result, the case is not entirely "between citizens of different states" even though Plaintiff and Principal are of diverse citizenship. *See Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894) ("[A] suit between a State and citizen or a corporation of another State is not between citizens of different States . . . ."); *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) ("[I]f one party to an action is not a citizen, . . . the district court does not have jurisdiction of the action under § 1332, even if all other parties to that action are citizens of different states."). Therefore, regardless of WestEd's classification for purposes of diversity of citizenship, diversity jurisdiction does not exist in this case.

### B. Federal Question Jurisdiction

"Where, as here, no diversity of citizenship exists, a federal question is required for removal." *Fisher v. NOS Commc'ns (In re NOS Commc'ns)*, 495 F.3d 1052, 1057 (9th Cir. 2007). If federal question jurisdiction exists, an action is removable without regard to the citizenship of the parties. 28 U.S.C. § 1441(b). District courts have federal question jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Hunter*, 582 F.3d at 1042-43. It does not arise from "a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Hunter*, 582 F.3d at 1042 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14 (1983)). Therefore, the plaintiff can "avoid

federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392; *Hunter*, 582 F.3d at 1042.

However, there is an exception to the well-pleaded complaint rule and the accompanying rule that a defense of federal preemption does not give rise to federal question jurisdiction. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). If a plaintiff's state-law claims are completely preempted under section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), the complaint "is converted from 'an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). In the context of ERISA, this narrow exception is limited to complete preemption under section 502(a). The alternative defense of conflict preemption under section 514(a), 29 U.S.C. § 1144(a), does not provide a basis for federal question jurisdiction. *Marin Gen. Hosp.*, 581 F.3d at 945.

In this case, the Complaint asserts only breach of contract and bad faith insurance practices, two state-law claims that provide no basis for federal question jurisdiction. Therefore, unless Plaintiff's claims are completely preempted under section 502(a) of ERISA, there is no federal question jurisdiction. A state-law claim is completely preempted under section 502(a) of ERISA if (1) at some point in time the plaintiff "could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004); *Marin Gen. Hosp.*, 581 F.3d at 946.

Whether Plaintiff's claims of breach of contract and bad faith insurance practices could have been brought under ERISA § 502(a)(1)(B) depends on whether her plan qualifies as an ERISA-regulated benefits plan. Section 502(a)(1)(B) provides, "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The "plan" must be a qualifying "employee benefit plan" established or

maintained by "any employer engaged in commerce," "any employee organization . . . representing employees engaged in commerce," or both. ERISA § 4(a), 29 U.S.C. § 1003(a). An "employee benefit plan" is either an employee welfare benefit plan, established to provide, among others, disability benefits, or an employee pension benefit plan. ERISA § 3(1)-(3), 29 U.S.C. § 1002(1)-(3). However, even if the plan is a qualified employee benefit plan, it is nevertheless exempt from ERISA's coverage if it is also a "government plan." ERISA § 4(b)(1), 29 U.S.C. § 1003(b)(1).

In this case, Plaintiff's plan is a qualified employee benefit plan, because it was established by WestEd, Plaintiff's employer, and provides for disability benefits. The dispute centers on whether the plan is an exempt government plan. A government plan is "established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." ERISA § 3(32), 29 U.S.C. § 1002(32). There is no disagreement that WestEd "established or maintained" Plaintiff's plan. Therefore, the issue boils down to whether WestEd is a political subdivision of a state, or an agency or instrumentality of the federal or state government.

The parties do not contend that WestEd is a political subdivision of a state, and, as discussed earlier, there is nothing to suggest that WestEd is a political subdivision of any state. As for whether WestEd is a government agency or instrumentality, the terms "agency" and "instrumentality" are not defined in ERISA and the Ninth Circuit has not interpreted the terms within the context of ERISA § 3(32), 29 U.S.C. § 1002(32). Other circuits, however, have applied different tests to determine whether an entity is an agency or instrumentality of the government for purposes of ERISA's "government plan" exemption.

The Seventh Circuit follows the test laid out in *NLRB v. Natural Gas Utility Dist. of Hawkins County, Tenn.*, 402 U.S. 600 (1971). *See Shannon v. Shannon*, 965 F.2d 542, 548 (7th Cir. 1992). The NLRB test asks whether the entity was "either (1) created directly by the state, so as to constitute departments or administrative arms of the

government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *Id.* (quoting *Hawkins County*, 402 U.S. at 604-05). The Second Circuit, on the other hand, considers six factors that the Internal Revenue Service uses to determine whether an entity is an agency or instrumentality of the government for purposes of 26 U.S.C. § 414(d), which contains a definition of "government plan" very similar to ERISA's definition of the term. *See Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 917-18 (2d Cir. 1987). The six factors include (1) whether the entity "is used for a governmental purpose and performs a governmental function," (2) whether performance of its function "is on behalf of one or more states or political subdivisions," (3) whether there are any "private interests involved," (4) whether "control and supervision of the organization is vested in public authority," (5) whether "express or implied statutory or other authority is necessary for the creation and/or use" of the entity, and (6) the "degree of financial autonomy and the source of [the entity's] operating expenses." *Id.* (quoting Rev. Rul. 57-128, 1957-1 C.B. 311). Finally, recognizing that an entity may be governmental for some purposes but not others, the D.C. Circuit looks to the relationship between the entity and its employees, determining the extent to which the employees are treated as government employees. *See Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1205, 1206 & n.11 (D.C. Cir. 1993).

To better understand the underlying concerns and reasons for ERISA generally and for the "government plan" exemption more specifically, some courts have also considered the legislative history of ERISA's enactment. ERISA's goal was to cure deficiencies in the private pension system, including "inadequate vesting provisions, insufficient assets to assure payment of future benefit obligations, and premature termination of under-funded benefit plans." *Rose*, 828 F.2d at 913 (citing H.R. Rep. No. 93-533 (1974)). The "government plan" exemption was included in part because it was believed that "the ability of the governmental entities to fulfill their obligations to employees through their taxing powers" would reduce the likelihood of under-funding and premature termination of benefit plans. *Id.* at 914 (quoting S. Rep. No. 93-383 (1974)). Therefore, an important

consideration is whether the entity at issue has taxing powers or is otherwise funded by government entities that have taxing powers.

In this case, a balancing of the factors and considerations laid out above indicates that WestEd is a government agency or instrumentality for purposes of ERISA. On the one hand, some of WestEd's characteristics suggest that it is not a governmental agency or instrumentality. WestEd possesses no power of eminent domain, its records are not public, and its employees are not subject to a government merit system.

However, the majority of characteristics weigh in favor of finding that WestEd is a government agency or instrumentality. First, as mentioned, WestEd is a public joint powers agency created pursuant to the California Government Code by FWL and SWRL, two federally created and funded regional educational laboratories. *See Kendall v. Standard Ins. Co.*, 17 F. Supp. 2d 1128, 1132 (E.D. Cal. 1998) (fact that entity was created under California's corporation statutes as opposed to the California Government Code weighed in favor of finding that entity's plan was not a government plan). Second, WestEd's function and purpose is to conduct research to improve education. Because the government largely funds and administers public education, research aimed at improving education may reasonably be characterized as a governmental function. Third, the power to approve and manage WestEd's activities rests solely with its Chief Executive Officer, and although the CEO is not directly accountable to and removable by the public, he or she is accountable to the board of directors, the great majority of whom represent public education institutions. Fourth, although a small minority of board members represent private institutions, there are no private interests in WestEd in terms of ownership, because there is no publicly-held stock.

Finally, as mentioned, one of the reasons for the "government plan" exemption was the belief that government entities are better equipped to avoid the pitfalls of under-funding and premature termination of benefit plans. Although WestEd has no power of taxation, the majority of its funding derives from government institutions, including the U.S. Department of Education, the U.S. Department of Justice, several county and state

offices and departments, and a number of state universities, colleges, and school districts. In fact, according to its website, WestEd is tax-exempt under section 115 of the Internal Revenue Code, which exempts "income derived from any public utility or the exercise of any essential governmental function and accruing to a State or any political subdivision thereof . . . ." 26 U.S.C. § 115(1). Because WestEd is heavily funded by government institutions, and therefore backed by governmental taxing powers, the concerns underlying ERISA's enactment are substantially alleviated in this case.

Because WestEd will be considered a government agency or instrumentality for purposes of ERISA, the disability plan at issue here is an exempt "government plan," such that Plaintiff could not have brought her claims under ERISA. As a result, there is no complete preemption under section 502(a) of ERISA. Without complete preemption, there is no federal question jurisdiction, and because neither basis for federal subject matter jurisdiction exists in this case, it must be remanded.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand (doc. # 18) is granted. The Clerk shall remand this case to the Arizona Superior Court, Maricopa County.

DATED this 13th day of January, 2010.

_____
Neil V. Wake
United States District Judge